THE BRADFORD, ELDRED AND CUBA RAILROAD COMPANY et a..., Respondents, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

An agreement by A. to make advances to meet obligations of B., to be repaid by the latter upon demand, may not be enforced in equity by a decree for specific performance.

The railroad corporation plaintiff and the defendant herein entered into an agreement which, after recitals to the effect that plaintiff's road had been constructed by parties in sympathy with defendant with the view of contributing to its business and of protecting it against hostile lines, and that said plaintiff might require assistance from defendant in the completion and successful operation of its road, contained an agreement upon the part of defendant, that it would make good any deficiency in the net earnings of the plaintiff to meet the interest upon its bonded indebtedness.  For any advances so made, the first lien was given to defendant upon the railroad franchises, property and surplus earnings

of the plaintiff next after such bonded indebtedness. The net earnings of said plaintiff proving insufficient to pay interest on its bonded indebtedness and defendant refusing to pay the same, an action was brought by the trustee of the mortgage given to secure said bond, to foreclose the same, in which action a receiver was appointed of its property and franchises. In this action brought by the company and said receiver to compel defendant to pay such interest, *held*, that the action was substantially one for specific performance; that the contract was simply one to advance money, the sums advanced to be repayable on demand; and so, that the contract was not the subject of an action for specific performance.

It appeared that the plaintiff was, and for some time prior to the commencement of the action had been, hopelessly insolvent. *Held* that, assuming in case defendant advanced the money, it would not have the legal right to demand an immediate payment, as plaintiff could not repay said advances and as the security therefor proved to be entirely worthless, performance of the contract could not be enforced.

It was claimed, on the part of plaintiff, that the insolvency of the plaintiff company was a contingency contemplated by the contract. It appeared that, for the year prior to entering into the contract, said company had earned enough to pay operating expenses, interest on its bonds and a dividend to its shareholders, leaving a surplus in its treasury. *Held*, it could not be assumed the parties contemplated that said plaintiff would permanently cease to earn enough to pay operating expenses; that it was to be assumed the obligation to advance was founded upon the belief that a temporary contingency might arise by which a part payment of interest could not be made by plaintiff because of an insufficiency of net earnings, in which case defendant was bound to advance enough to make such payment.

The complaint asked for an accounting between the parties, which it claimed was necessary, and hence that a court of equity had jurisdiction, and having obtained it for one purpose could retain it for all, and give final relief. *Held* untenable; that no accounting was necessary; that while it might be necessary, in order to show that there had been no net earnings, to examine plaintiff's books for the purpose of discovering what the gross earnings had been and how they had been paid out, this involved no accounting between parties, within the meaning of the term as used in relation to the jurisdiction of a court of equity over matters of account.

Also *held*, that if the action were to be regarded as one at law to recover damages for the violation of the agreement, it was not maintainable, as no facts were pleaded or proved showing damages sustained by the plaintiff company, because of defendant's alleged breach of its agreement.

(Argued January 30, 1890; decided October 21, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of October, 1887, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The complaint in this action alleged and the trial court found, in substance, the following facts:

In March, 1883, the corporation plaintiff and the defendant entered into an agreement, of the body of which the following is a copy:

" This agreement, made this twelfth day of March, A. D. 1883, by and between the New York, Lake Erie and Western Railroad Company, party of the first part, and the Bradford, Eldred and Cuba Railroad Company, herein called the Eldred Company, party of the second part, witnesseth:

" WHEREAS, The railroad of the Eldred Company, extending from a connection with the railroad of the Erie Company, at Wellsville, to a connection with the railroad of the Bradford, Bordell and Kinzua Railroad Company, at Eldred, with a branch extending from its Little Genessee station to a further connection with the railroad of the Erie Company at Cuba, has been constructed by parties in sympathy with the Erie Company, with a view of contributing to the business of said company, and of protecting it against hostile lines, now in process of construction;

"And WHEREAS, Said Eldred Company may require assistance from the Erie Company in the completion of its said railroad, and in its successful establishment, operation and maintenance;

" Now, in consideration of the premises, it is agreed as follows:

" The Eldred Company agrees:

" *First.* That it will at all times deliver to said Erie Company, for transportation, all the freight and passengers that it can lawfully control or influence, destined to points that can be reached by way of the railroad of the Erie Company or its connections, and will use its influence to promote the interests

and the business of the Erie Company so far as it can, with proper regard for its own interests.

"*Second.* That for the protection of the Erie Company in rendering assistance to the Eldred Company under this contract, it will cause to be deposited with the Erie Company a majority of the capital stock of the Eldred Company, in such manner as shall be required, upon which, so long as the management of the Eldred Company shall be satisfactory to it, the Erie Company will give, or cause to be given, to such representative of the Eldred Company as shall be designated by it, the right to vote upon the stock so deposited.

"The Erie Company agrees:

"*First.* That so far as it can, with a proper regard for its own interests, it will use its influence and exercise its control to promote the interests and the business of the Eldred Company.

"*Second.* That upon condition that the corporate control of the Eldred Company shall become and remain vested in the Erie Company, as above provided, the Erie Company will make good any deficiencies in the net earnings of the Eldred Company to meet the interest upon its present bonded indebtedness from time to time, as the same becomes due and payable, and for any and all advances so made by it, with interest thereon, as well as for any and all advances made to said Eldred Company by the Erie Company for other purposes, with interest thereon, the Erie Company shall have, and is hereby granted, a first lien upon the railroad franchises and property of the Eldred Company next after its bonded indebtedness aforesaid, and a first charge upon its surplus earnings next after the payment of the accruing interest upon its said bonded indebtedness.

"This contract shall continue during the corporate existence of the companies parties hereto."

The plaintiff company duly performed the agreement on its part and defendant has had the general direction and control of said plaintiff's business and affairs since that time.   Interest

on plaintiff's bonded indebteness was paid up to July 1, 1884, when there was a deficiency of said plaintiff's net earnings to meet the half-yearly interest then due, and there has been a like deficiency to meet payments subsequently falling due, and defendant, upon demand, has refused to advance money to make such payments.   In consequence of the non-payment of the interest, the trustee of the mortgage given to secure said bonds, has commenced an action to foreclose the same, in which action plaintiff Thomas C. Platt, was appointed receiver.

The relief asked for was as follows :

" That an account may be taken of the net earnings of the railroad of the plaintiff company since the date of the said agreement.

" That an account may be taken of the amount due in respect of interest upon the aforesaid mortgage debt of the plaintiff company.

"And that the plaintiffs may have judgment against the defendant for the amount that may be found due; and that the said defendant do pay to the plaintiffs, or in such manner as the court shall order and direct, the amount that shall be found due from the defendant upon such accounting in respect of the difference between the amount of the said net earnings and the amount of the interest due upon and in respect of the said mortgage debt of the plaintiff company.

"And that the plaintiffs may have such other and further relief in the premises as may be just and equitable."

Further facts are stated in the opinion.

*Benjamin H. Bristow, Charles Steele* and *David Wilcox* for appellant.  The contract is unlawful.  (Code Civ. Pro. § 993; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 N. Y. 263; *M. F. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 45 Hun, 84, 89; Laws of 1869, chap.  917; Pierce on Railroads, 514, 515; *T. & B. R. R. Co.* v. *B., H. T. & W. R. R. Co.*, 86 N. Y. 107; Laws of 1839, chap. 218; 1 R. S. 603, § 6; Laws of 1850, chap. 140, §§ 5, 8; Laws of 1854, chap. 282; *Talmadge* v. *Pell*, 7 N. Y. 328; *N. Bank* v. *Jones*, 95 id. 115; *Berry*

v. *Yates*, 24 Barb. 199 ; *F. N. Bank* v. *N. Bank*, 92 U. S. 122 ; *F. Co.* v. *L. Inst.*, 68 Me. 43 ; *Pearson* v. *C. R. R. Co.*, 28 Alb. L. J. 366 ; *Crocker* v. *Whitney*, 71 N. Y. 161 ; *Bank Comrs.* v. *Bank*, 15 id. 513 ; *Knowlton* v. *Co.*, 57 id. 528 ; *Pratt* v. *Short*, 79 id. 437 ; *Barton* v. *P. J. Co.*, 17 Barb. 397 ; *P. Co.* v. *R. R. Co.*, 81 Penn. St. 104 ; *Milbank* v. *N. Y., L. E. & W. R. R. Co.*, 64 How. Pr. 20 ; Morawetz on Corp. § 360 ; *Ex parte Holmes*, 5 Cow. 426 ; *Vail* v. *Hamilton*, 20 Hun, 355 ; 85 N. Y. 433 ; *Gray* v. *Hook*, 4 id. 449, 459 ; *S. Bank* v. *King*, 44 id. 87 ; *Rose* v. *Truax*, 21 Barb. 361.) The agreement for advances made by defendant is *ultra vires*, and, therefore, so far as it is executory, is incapable of enforcement. (1 R. S. [8th ed.] 1723, § 3 ; *People ex rel.* v. *Newton*, 112 N. Y. 399 ; *O. R. Co.* v. *R. Co.*, 130 U. S. 1 ; *N. Bank* v. *Jones*, 95 N. Y. 121 ; Laws of 1863, chap. 278 ; *Bank of Genesee* v. *P. Bank*, 13 N. Y. 309 ; *C. Bank* v. *Co.*, 26 Barb. 23 ; *Morford* v. *F. Bank*, 26 id. 568 ; *B. Bank* v. *E. Co.*, 30 id. 421 ; *F. Bank* v. *S. D. Co.*, 5 Bosw. 275 ; *Bank* v. *Bank*, 16 N. Y. 125, 128 ; *P. R. R. Co.* v. *S. L. Co.*, 118 U. S. 290 ; *Davis* v. *O. C. R. R. Co.*, 131 Mass. 258 ; *M. P. R. Co.* v. *W. P. R. Co.*, 7 Wis. 59 ; *M. & E. Co.* v. *Co.*, 20 N. J. Eq. 562 ; *A. Co.* v. *Riche*, L. R. [7 H. L.] 653 ; *Tracy* v. *Talmadge*, 14 N. Y. 216 ; *R. Co.* v. *B. Co.*, 131 U. S. 389 ; *Thomas* v. *R. R. Co.*, 101 id. 71 ; *Beveridge* v. *E. R. R. Co.*, 112 N. Y. 1 ; *M. T. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 45 Hun, 84 ; *Flagg* v. *M. Co.*, 20 Blatch. 142 ; *Moran* v. *P. Co.*, 32 Fed. Rep. 878.) The condition upon which the advances were to be made is not fulfilled. (*Seybolt* v. *Co.*, 95 N. Y. 575 ; *Beveridge* v. *E. R. Co.*, 112 id. 1 ; *M. T. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 45 Hun, 84 ; *Graves* v. *White*, 87 N. Y. 463 ; *Hubbell* v. *P. Co.*, 100 N. Y. 41, 47 ; *Starbird* v. *Barrons*, 38 id. 230 ; *Tipton* v. *Feitner*, 20 id. 423 ; *Williams* v. *Healy*, 3 Den. 363 ; *Pope* v. *Porter*, 102 N. Y. 366 ; *Smith* v. *Brady*, 17 id. 173 ; *Byron* v. *Low*, 109 id. 291 ; *Kietz* v. *Peck*, 113 id. 222 ; *Morris* v. *Sliter*, 1 Den. 59 ; *Higgings* v. *Co.*, 60 N. Y. 553 ; *Terrett* v. *Co.*, 87 id. 92 ; *G. Bank* v.

*Tuaks*, 101 id. 449; *N. Co.* v. *Jackson*, 21 N. Y. S. R. 458.) Even if the contract be valid, plaintiffs have established no right no recover. (*Konitzky* v. *Meyer*, 49 N. Y. 571; *Thompson* v. *Taylor*, 72 id. 32; *Holmes* v. *Weed*, 19 Barb. 118; *M. T. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 45 Hun, 84; *Mann* v. *Fairchild*, 2 Keyes, 111; *Bradley* v. *Aldrich*, 40 N. Y. 504; *T. B. Co.* v. *B. Co.*, 86 id. 107, 127; *Moores* v. *Townsend*, 102 id. 387; *Wheelock* v. *Noonan*, 108 id. 179; *Marvin* v. *Brooks*, 94 id. 71; *Uhlman* v. *L. Ins. Co.*, 109 id. 421, 433; *P. C. Co.* v. *C. Co.*, 31 id. 98; *Jones* v. *Newhall*, 115 Mass. 244, 248; *M. Co.* v. *Ripley*, 10 Wall. 339 359; Pom. on Spec. Per. § 47; Fry on Spec. Per. § 44; *Carter* v. *Ins. Co.*, 1 Johns. Cli. 463; *Rector* v. *Higgins*, 4 Robt. 372; *Howe* v. *Nickerson*, 14 Allen, 400; *Pierce* v. *Plumb*, 74 Ill. 326; *Sichel* v. *Mosenthal*, 30 Beav. 370; *Larios* v. *Gurety*, L. R. [5 C. P. Div.] 346; *McKewen* v. *Sanderson*, L. R. [20 Eq. Div.] 65; *Richmond* v. *D. Co.*, 33 Ia. 422; *Rogers* v. *Challis*, 27 Beav. 175; *Crampton* v. *Company*, L. R. [7 Ch. App.] 562; *Willard* v. *Taylor*, 8 Wall. 556, 557; *Trustees* v. *Thacher*, 87 N. Y. 311; *Morgraf* v. *Muir*, 57 id. 155; *Peters* v. *Delaplaine*, 49 id. 362; *Young* v. *Township*, 10 U. S. 107, 112; *Whitney* v. *New Haven*, 23 Conn. 624; *Webb* v. *C.*, 1 DeG., M. & G. 521; *Hubbell* v. *Ins. Co.*, 100 N. Y. 41; *Pardee* v. *Kanady*, Id. 121; *Pettibone* v. *T. Co.*, 148 Mass. 411; *Price* v. *Assheton*, 1 Y. & C. 441; *Matthews* v. *Terwilliger*, 3 Barb. 50; *S. Co.* v. *N. W. Co.*, 6 H. L. Cas. 113; *Thompson* v. *Ketcham*, 8 Johns. 189; *Purdy* v. *Phillips*, 11 N. Y. 406; *L. O. Co.* v. *Mason*, 16 id. 464; *Wright* v. *Whiting*, 40 Barb. 240; *Herrick* v. *Bennett*, 8 Johns. 374; *Gaylord* v. *Van Loan*, 15 Wend. 308; *Herrick* v. *Woolverton*, 41 N. Y. 581; *DeLavalette* v. *Wendt*, 75 id. 579.)

*Matthew Hale* for appellant. Irrespective of any question of the lawfulness or validity of the contract sued upon, the conclusions and judgment of the court below were erroneous. (*M. T. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 45 Hun, 84; *Romeyn* v. *Sickles*, 108 N. Y. 650; *Day* v. *Town of New*

*Lots*, 107 id. 148; 2 Benj. on Sales [4th ed.], 1056, § 1229; *Wiseman* v. *Vanderputt*, 2 Vern. 203; *Muller* v. *Pondir*, 55 N. Y. 325, 338, 339; *Hubbell* v. *P. M. Ins. Co.*, 100 id. 41, 48; *Pardee* v. *Kanady*, 100 id. 121; *Moran* v. *P. Co.*, 3罗 Fed. Rep. 878; *Pettibone* v. *T. Co.*, 148 Mass. 411; Pom. on Spec. Per. § 48; *Sichel* v. *Mosenthal*, 30 Beav. 371; *Thompson* v. *Ketcham*, 8 Johns. 189.) The contract was invalid and unlawful. (Laws of 1869, chap. 919; *People* v. *B., H. T. & W. R. Co.*, 12 Abb. [N. C.] 230; *Thomas* v. *R. R. Co.*, 101 U. S. 71.) The fact, as found by the trial court, that the shares of the stock so deposited still remain in the possession of the defendant company does not affect the right of the parties. The stock in question is not the property of the plaintiff corporations; it was the property of their stockholders, who are not parties to this suit. Whether it should be tendered back to them, is a question between them and the defendant, not between the plaintiff and defendant. (*Stevens* v. *Austin*, 1 Metc. 557.) The judgment should be reversed. (*Nellis* v. *Clark*, 20 Wend. 24; 4 Hill, 424; *Keefe* v. *Warner*, 11 Wkly. Dig. 313 · 87 N. Y. 624.)

*William W. MacFarland* for respondent. The common law, as interpreted both in England and in this country, permits perfect freedom of contract on the part of railroad corporations for a permanent interchange of traffic, and even the power to lease at common law. (Rorer on Railroads, 603; Wood on Railway Law, 517, 1686, § 174; *Woodruff* v. *E. R. Co.*, 93 N. Y. 609; Laws of 1839, chap. 218; Laws of 1847, chap. 222; Laws of 1855, chap. 302; Laws of 1864, chap. 582; Laws of 1867, chap. 254; Laws of 1869, chaps. 237, 844; Laws of 1880, chap. 349; Laws of 1879, chap. 503; *O. & L. C. R. R. Co.* v. *N. & L. R. R. Co.*, 112 U. S. 316; 1 Morawetz on Corp. §§ 227, 231; *Foss* v. *Harbottle*, 2 Hare, 491; *Bacon* v. *Robertson*, 18 How. Pr. [N. S.] 485; *Robinson* v. *Smith*, 3 Paige, 232; *R. Co.* v. *Allerton*, 18 Wall. 253; *Lorrilard* v. *Clyde*, 86 N. Y. 389; *Arnot* v. *E. R. Co.*, 5 Hun, 668.) The settled rules of law exclude the defenses set

up. (*W. A. Co.* v. *Barlow*, 63 N. Y. 68; *R. L. R. Co.* v. *Roach*, 97 id. 381; Wood on Railway Law, 528; *W. W. S. Bank* v. *Ford*, 27 Conn. 282; *Woodruff* v. *E. R. Co.*, 93 N. Y. 618; *R. Co.* v. *McCarthy*, 96 U. S. 258; *Gould* v. *Banks*, 8 Wend. 567; *Everett* v. *Saltus*, 15 id. 474; *Holbrook* v. *Wright*, 24 id. 168; *Winter* v. *Coit*, 7 N. Y. 288; *Duffy* v. *O'Donovan*, 46 id. 223.) The contracts in question created a continuing pecuniary obligation, the consideration for which is entire and given once for all. (*Kernochan* v. *Murray*, 111 N. Y. 306; *Lloyd* v. *Harper*, L. R. [16 Ch. Div.] 290–309; Wood on Railway Law, § 180; *Arnot* v. *E. R. Co.*, 5 Hun, 608; 67 N. Y. 315; 2 Pars. on Cont. [7th ed.] 201; *State* v. *Barker*, 96 Am. Dec. 175; *Brewer* v. *Herbert*, 31 Md. 301; 96 Am. Dec. 583, 588.)

PECKHAM, J. The members of the court are not agreed upon the question of the validity of the contract in this case, and, therefore, no opinion thereon is expressed. A majority of the court, however, is of the opinion that the judgment herein must be reversed upon grounds which do not touch upon its validity, and I will briefly state what they are.

The judgment provides for the recovery by the plaintiff company of the full amount of the interest on its bonded indebtedness which had accrued prior to the entry of such judgment, and of course long after the commencement of the action. The action was thus treated as an equitable one, in which relief might be granted up to the time of the entry of the decree. As the plaintiff had been unable to pay any portion of the interest due on its bonds for some time prior to the entry of such decree, the full amount of that interest was therein decreed to be paid by the defendant to the plaintiff.

The theory of the recovery was that the defendant having promised to advance the money necessary to make good any deficiencies in the net earnings of the plaintiff company to pay the interest on its bonded debt, therefore, the defendant must make such advances, and judgment was given decreeing their payment to the plaintiff. This is substantially a decree for the

specific performance of a simple contract to advance money to the plaintiff company.   Generally speaking, equity does not decree a specific performance of such a contract.

This case is sought to be distinguished from this general rule by the fact that the defendant, under this contract, while bound to make the advances even if there were an entire failure of net earnings, had no right under it to claim repayment of such advances until net earnings should be made, and that the repayment must proceed from such fund.   It is urged that this is one of the chances taken by the defendant when it agreed to make such advances, and that the consideration for such agreement to advance and to rely for repayment upon the future existence of a fund arising from net earnings was to be sought in the other part of the agreement by which the defendant was to reap the advantage of the so-called traffic arrangement between the two companies.

Under such circumstances it is claimed that the case is taken out of the general rule as to specific performance in equity, and that the defendant ought to be decreed to make the necessary advances to pay the interest on the bonds of plaintiff company without any proof of damage to the company, so long as the defendant, by its agreement, has bound itself so to do, and to look for repayment for such advances only from a fund which does not now exist, and which, so far as present indications would tend, will never exist again.

But even assuming that the fact contended for would alter the rule in equity, I am not able to so construe this agreement as to admit that the defendant has no right to demand repayment of its advances except from the fund created by the net earnings of the plaintiff company.   By the terms of the agreement, it is true that security for the repayment of the advances was given by providing for a first charge in favor of defendant on such net earnings, next after the payment of the accruing interest upon its bonded indebtedness, but the agreement also provided, as a further security to defendant for such repayment, for a first lien upon the property and franchises of the railroad company.

The result was to give the defendant all the security the plaintiff company could give for the repayment of the advances made by it, but because all the security possible was given, including a specific charge on a special fund, it by no means follows that the defendant should have no right to attempt to enforce payment of the advances until the special fund existed, upon which the defendant was given a specific lien. Nothing in the agreement, that I can see, would prevent the defendant from foreclosing the lien upon the property and franchises of the plaintiff company (subject, of course, to the first mortgage) at any time it should see fit to do so, in order, if possible, to secure repayment of its advances, or, failing in that, then to obtain possession of the road at a sale thereof under such foreclosure. Or defendant might proceed in an ordinary action at law to obtain a judgment for the amount of its advances. The fact that no net earnings had been made, and that there was no fund arising therefrom out of which to pay the advances, would constitute no defense to either action. There was no time stated in the agreement for the repayment of such advances, and nothing is contained therein, that I can see, which makes it necessary for any particular time to elapse, or for any particular thing to happen, after the making of the advances, before their repayment becomes due. From an attentive reading of the case, it may be fairly assumed that both companies supposed there would be net earnings, and that a failure to realize them at any particular time would be only temporary, and hence a provision for a first charge thereon as made in the agreement was not a mere empty provision or one which either party supposed would never be capable of enforcement. But that does not alter the character of the obligation which the plaintiff company assumed, and that obligation was in strictness, I think, an obligation to repay the advances immediately or upon demand. (*Thompson* v. *Ketcham*, 8 Johns. 190; *Purdy* v. *Philips*, 11 N. Y. 406.) These authorities show that where no time of payment is specified in a contract for the payment of money, it is payable immediately. The law is so well settled on that point as scarcely to warrant the cita-

tion of authorities. There is nothing in the contract in question from which a different time of payment can be asserted, and none can properly be reasoned out.

We may suppose that neither party thought it probable that a claim for a repayment of any advance would be made at once or shortly after such advance was made, but we are dealing with the strict legal right of the defendant under the contract, and that right is not altered or diminished by the expectations or beliefs of the parties.

The whole substance of the agreement, so far as the advances are concerned, is that an obligation was assumed by the defendant to advance money enough to make up any deficiency in the net earnings to pay the interest on the bonded indebtedness of the plaintiff company, and that company was placed thereby under an equal obligation to repay to the defendant the amount of such advances upon demand, or in other words, immediately. Such an obligation is not the subject of a decree for a specific performance in equity. If there be any remedy at all, that remedy is at law by a recovery of damages. (*Carter* v. *U. Ins. Co.*, 1 Johns. Ch. 463; *Sichel* v. *Mosenthal*, 30 Beav. 371; *Crampton* v. *V. R. Co.*, L. R. [7 Ch. App. Cas.] 562; *Pierce* v. *Plumb*, 74 Ill. 326, 330, 331.)

Of course in the action at law there must be proof in the case showing in some form and to some extent the amount of the damages that the plaintiff has sustained by the defendant's breach of his agreement. And it is equally plain that it must be a rare case indeed where it can be said that a person has sustained any damages by the refusal of another to advance money, which he has agreed to advance, where the person to whom it is to be advanced is by the agreement under a valid obligation to pay it back immediately. Equity, at all events, never enforces such an agreement, and in a court of law, there must be proof of damages.

But we may assume, without deciding, that the defendant, in case it advanced the money, would not have the legal right to demand an immediate repayment and consequently would not have the right to maintain an action to enforce it, although

not compelled to await the existence of net earnings before claiming such repayment.   There yet remains an unanswerable objection to the maintenance of this action, and that objection lies in the fact that the plaintiff company is, and for some time prior to the commencement of this action had been hopelessly insolvent, and the payment of the interest on its bonds by the defendant would be neither more nor less than a pure gift, as the plaintiff could not repay it, and the security for such repayment proves to be entirely worthless.

This is a condition of things not contemplated by either party at the time of the execution of the contract.   It is claimed that the insolvency of the plaintiff company was one of the facts which the contract provided for, as the plaintiff company would be insolvent if it could not earn enough to pay its operating expenses and the interest mentioned, and that it was in just such case that the contract provided for an advance by the defendant to the plaintiff company.

But this is clearly not the correct construction.   The contract was made March 12, 1883.   The plaintiff company was chartered in 1881, and in the year 1882 it had earned more than enough to pay operating expenses and interest on its bonds, and a dividend to its shareholders, besides leaving a surplus in its treasury.   It never could have been contemplated that the company would permanently cease to earn enough even to pay operating expenses, and it cannot be supposed that it was ever in the thoughts of the officers of either of the two companies that the time would speedily come when such a contingency would arise and seemingly become a fixed financial condition.   The obligation to continually pay the interest on the bonds of a company which could not earn enough to pay its own operating expenses, is one which we cannot, in the light of the proved facts in this case, credit the plaintiff company with obtaining, or charge the defendant with assuming.   The consideration which the defendant would obtain by reason thereof is grossly insufficient to predicate the voluntary assumption by it of any such obligation.   I think it may be properly assumed that the obligation to advance was founded upon a belief that

in the future it might be with the plaintiff company as with others owing to temporary embarrassments, or the working of unforeseen though temporary causes, a contingency might arise by which a particular payment of interest could not be made, because of an insufficiency of net earnings from which to pay it, and, in that event, the defendant was to advance enough to make up such deficiency, and this advance was to be secured by the pledge of the future net earnings.   It was clearly contemplated and supposed that there would be such earnings, although their existence was not a condition precedent to the right to claim repayment for such advances.   A perusal of the whole agreement leaves upon my mind a clear impression that it was assumed there would generally be sufficient net earnings to pay the interest on the bonds of the plaintiff company, but that the contingency might "from time to time" arise when there would be a temporary deficiency in such net earnings to pay such interest, and, in that event, the defendant was bound to advance enough to make such payment, taking, as security for a repayment thereof, the first charge upon the net earnings fund after the payment of the interest, and a first lien on the property and franchises of the corporation after the mortgage bonds.   This, of course, contemplates that there would be such surplus net earnings, and not that there would be a continuous annual deficit therein, together with a deficiency in the earnings to an extent rendering it impossible to pay the ordinary operating expenses of the railroad.

Events subsequent to the making of the agreement have actually placed the plaintiff company in a position where, for a long time, its earnings have scarcely, if at all, equaled its operating expenses, and where, if the defendant were to advance a sum sufficient to pay the interest, or any part thereof, on the plaintiff company's bonds, it would find that the security for repayment, provided for by the agreement, had become, contrary to the expectations of both parties, of no value.   To enforce the specific performance of such a contract would work an unexpected hardship upon the defendant, and would, in truth, do it great injustice.

A contingency has happened in the case, not within the contemplation of either of the parties to the contract, to wit, the continuous failure of the plaintiff company to earn money enough to pay all of its operating expenses, and hence the failure of the plaintiff company to realize net earnings out of which to pay the interest, or some portion thereof, on its bonds, has been, not only partial, but complete; not "from time to time" only, but all the time, and, in such case, it would be oppressive for a court of equity to enforce performance. Under these circumstances, no specific performance will be decreed. (*Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311.)

Thus far I have considered this case as if it were an action in equity asking for a decree for the specific performance of the agreement. As thus considered, I think the action, for the reasons already stated, cannot be sustained. But it may be urged that an accounting was necessary between the parties, and hence a court of equity had jurisdiction to take it, and, having obtained jurisdiction for one purpose, would retain it for all and give final relief. The answer is that no accounting whatever is necessary. The plaintiff simply alleged that there had been no net earnings, and, therefore, asked that the full amount of the interest on its bonds should be paid to it by the defendant company. The fact of there being no net earnings, was a fact to be proved like any other fact. To make such proof, it might be necessary to examine the books of the plaintiff company for the purpose of discovering what the gross earnings had been, and how such gross earnings had been paid out. But that involved no "accounting" between these parties, as such term is used in speaking of the jurisdiction of a court of equity over the matter of accounts.

If, however, the action be regarded as one at law, seeking to recover money damages for a violation of the agreement by the defendant, I am of the opinion there is a fatal defect in the plaintiff's case. In the first place, no facts are pleaded showing any damages sustained by the plaintiff company, consequent upon defendant's alleged violation of the agreement,

and in the next place no facts are proved which show that the plaintiff company has, in truth, sustained any damages.

It would seem that the whole agreement, taken together, shows that whatever obligation the defendant might rest under to make the advances to cover up the deficiencies alluded to, yet if this obligation were performed by defendant, and the moneys were in fact advanced, an equal obligation would at once spring up on the part of the plaintiff company to repay such money immediately, or as soon as the defendant should ask for its repayment. However this may be, certainly no damages have been proved by the insolvent company plaintiff arising from the failure of defendant to pay this interest.

The claim that the plaintiff company has, in all things, performed its part of the contract, and it would, therefore, be inequitable to permit defendant to repudiate its obligations, does not meet the objection of the unforeseen insolvency of the plaintiff company. The facts of the case do not bring the plaintiff within the principle of a part performance by it, and a resulting liability on defendant's part to specifically perform for the future.

While not necessary to the determination of this case upon the grounds already discussed, the argument that the plaintiff company has lost the right to claim performance by the defendant because the corporate control of plaintiff company by defendant provided for in the contract has been lost by the appointment of a receiver, does not lack plausibility. If it has not lost the right on that ground, we think it plain that the right has been lost by this unexpected contingency, the insolvency of the plaintiff company.

For these reasons, we are of the opinion that the judgment herein should be reversed and a new trial ordered, with costs to abide the event.

All concur (ANDREWS, J., on the ground of the insolvency of plaintiff), except RUGER, Ch. J., and FINCH, J., dissenting.

Judgment reversed.