STATE EX REL. WORD, RELATRIX, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 8,227.)

(Submitted June 11, 1941.   Decided October 2, 1941.)

[117 Pac. (2d) 494.]

*Mr. R. Lee Word, Mr. R. Lee Word, Jr.,* and *Mr. George E. Hurd,* for Relatrix, submitted a brief; *Mr. Hurd* argued the cause orally.

*Messrs. Gunn, Rasch & Gunn,* for Respondents, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an original proceeding for an appropriate writ seeking to set aside an order of the respondent court setting case No. 15,862 in the respondent court for trial as an equity case and prohibiting the respondent court from proceeding with the trial thereof without a jury. Case No. 15,862 has heretofore been before this court, and it was held by this court that the complaint was good as against the general demurrer. (*Word* v. *Union Bank & Trust Co.,* 111 Mont. 279, 107 Pac. (2d) 1083.) The sole question for our consideration is whether the action is one in equity or at law. If the action is one at law, then a jury trial must be had. For a general statement of the nature of the action, reference is made to the opinion in 111 Mont. 279, 107 Pac. (2d) 1083. It is sufficient to say in addition that the answer puts in issue most of the material allegations of the complaint.

It is the contention of defendants that in order for plaintiff ▇ to recover she must prove the value of her shares of stock and bonds, and that this would necessitate an accounting to determine the value of the property owned by the dissolved cor-

poration at the time of the acts complained of, the amount of its debts, and the expenses of administering the trust, and other things cognizable only by a court of equity. We do not agree that the action is one for an accounting in equity. As we made plain in the former opinion, the action is one in tort against the trustees of the dissolved corporation to recover damages. against them in their individual capacity, and against the bank acting in complicity with them. There is no attempt made in the complaint to seek recourse against property of the dissolved corporation; nor is there any attempt made to seek redress on behalf of other stockholders or bondholders. The action is simply one in which this individual plaintiff seeks damages from the individual defendants and the bank for a tort alleged to have been committed by them, resulting in damages to plaintiff. The fact that books and records will be introduced in evidence is no obstacle to the maintenance of the action. at law, or to the trial of the case by a jury.

In actions at law it is frequently necessary to examine books of account. (*Bradford, etc., Co.* v. *New York, etc., Co.,* 123 N. Y. 316, 25 N. E. 499, 11 L. R. A. 116.) See, also, *Nordeen* v. *Buck,* 79 Minn. 352, 82 N. W. 644, where the court quoted from the prior case of *Bond* v. *Welcome,* 61 Minn. 43, 63 N. W. 3, as follows: ''In 'an action at law for the recovery of money only, the plaintiff is entitled absolutely to a trial by jury, although it involves the examination of a long account on each side; for the Constitution guaranties him that right.' ''

The court was in error in setting the case down for trial as ▓ an equity case. Plaintiff is entitled to have the issues determined by a jury. It is suggested that plaintiff has an adequate remedy by appeal and, therefore, that this application cannot be entertained. This suggestion is without merit. Obviously the remedy by appeal would be inadequate in this: The trial of the case would undoubtedly cost considerable and, if the plaintiff is entitled to a jury, as we have found she is, any judgment rendered in the case would not be binding upon her. We believe in such a situation this court should interpose its

extraordinary power to correct the error of the district court at this stage of the case. Reasons similar to those which prompted us to intercede in the case of *State ex rel. Crowley* v. *District Court,* 108 Mont. 89, 88 Pac. (2d) 23, 121 A. L. R. 1031, apply here.

The writ applied for will issue.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICK-SON and ANDERSON concur.

MR. JUSTICE MORRIS:

I dissent. The opinion of the majority is so revolutionary, that I am impelled to express my views at length.

The writ is sought to prohibit the district court of the First Judicial District in and for Lewis and Clark county, and the Honorable R. E. McHugh of the Third Judicial District, called in to try the case, from proceeding to set or try case No. 15,862 in the district court without a jury, and that a certain order made and entered therein under date of May 29, 1941, wherein Judge McHugh set the case for hearing as an equity case, he vacated and set aside and the relator accorded a jury trial.

The controversy involves the handling of the affairs of the Beaverhead Ranch Company by the four individual defendants as statutory trustees after the expiration of the company's corporate charter in September, 1927. A number of actions involving some phase of the matter has preceded this. The cases litigated are in two branches, one commenced by the Union Bank & Trust Co. for the appointment of a receiver, and one by Augusta J. Word for damages to her holdings in the ranch company arising out of the alleged illegal and fraudulent acts of the defendant bank and four of the trustees. I will first take up and follow to conclusion the action commenced by the bank.

The ranch company was engaged in the ranching and livestock business in Beaverhead county; the three individual defendants and R. Lee Word, husband and chief counsel for the plaintiff, composed the board of directors of the company during its

corporate existence, and Word was its vice president and its counsel. R. Lee Word will hereafter be referred to as Word and Augusta J. Word as the plaintiff.

It appears that during the administration of the trust by the trustees a majority deemed it advisable to restock the ranch and borrow money from the Union Bank & Trust Company of Helena to purchase sheep. Such arrangement was perfected, the trustees giving notes for the money borrowed which were secured by a mortgage on the sheep and other trust property. Word, it is alleged, opposed putting the corporation back into the sheep business and advised against the trustees doing anything except to liquidate the trust as provided by statute. It is alleged in the pleadings, however, that Word signed the notes and mortgage given for the money borrowed to restock the ranch. This allegation was denied by plaintiff's reply in action numbered 15,862, supra.

In January, 1934, the Union Bank & Trust Company commenced an action in the district court praying for the appointment of a receiver to liquidate the affairs of the trust. That action resulted in the appointment of H. H. Pigott, one of the trustees, as receiver of the trust. He qualified and entered upon the duties of his office in May, 1934. Word filed notice of appeal on behalf of himself and the other trustees. That action in this court was entitled *Union Bank & Trust Company of Helena* v. *Penwell,* 99 Mont. 255, 42 Pac. (2d) 457. When the matter came on for hearing before this court counsel for the bank moved to require Word to produce his authority to make or maintain the appeal for the board of trustees. The record showed that the other four trustees were opposed to the appeal and we held that Word was without authority in the premises, and the appeal was dismissed. This concluded this action, and we held in a subsequent action, *State ex rel. Union Bank & Trust Co.* v. *District Court,* 108 Mont. 151, 91 Pac. (2d) 403, *inter alia,* that the questions relating to the legality of the appointment of the receiver in subsequent litigation were *res judicata.*

Litigation relative to the second branch of the controversy arose December 22, 1935, when Word, as attorney for the plaintiff, commenced action number 15,862, mentioned above, in the district court. A second amended complaint was filed November 28, 1938. The complaint alleges the plaintiff is the owner of 50 shares of stock of the Beaverhead Ranch Company and the holder of certain bonds issued by the corporation, while it was a going concern, secured by real estate mortgage on the ranch lands.

It is further alleged that counsel, on request, advised the trustees and the bank in 1929 and again in 1930 that the trustees could not lawfully put the dissolved corporation into any new business but should confine their acts to such as were provided by statute for liquidating the affairs of the dissolved corporation; that certain of the defendant trustees, notwithstanding such advice by counsel, in secret conference with officials of the defendant bank, arranged the loans mentioned, bought sheep and continued in business, and that such acts resulted in loss and damage tending to and did destroy the value of plaintiff's stock and bonds in the dissolved corporation; that one of the bands of sheep bought by the trustees to restock the ranch was bought from an officer of the creditor bank; that the defendant bank is the owner of 1,378 shares of the dissolved corporation and, in fact, that such bank owns all the shares that are on the records of the trust in the names of the four defendant trustees; admits that the bank owns or controls more than 1,400 shares of stock of the defunct corporation and that the plaintiff owns 50 shares; that in the year 1932 the bank took possession of the property and records of the trust and has since, up to the time the receiver was appointed, managed and handled the business and affairs of the trust as though the property involved were its own; paragraph XXIV of the complaint is in these words:

"Plaintiff alleges that each and all of the acts of said defendants above recited and alleged, had for their ultimate purpose the destruction of the value of said bonds and of said stock of

plaintiff, and that each and all of said acts above alleged to have been done and performed by said defendants were each and all done wilfully, wrongfully, fraudulently, maliciously, and unlawfully, and that as a direct result of said acts of said defendants alleged and set out in this complaint the value of said stock and of said bonds of plaintiff has been destroyed, and that neither said bonds nor said stock of plaintiff now has any sale value or loan value.'' In paragraph XXV it is alleged that the action is one in tort against the bank and the four defendant trustees, and that plaintiff does not ask for any relief against the dissolved corporation or its assets. Six thousand dollars actual and twelve thousand dollars punitive damages are prayed for.

Defendants jointly demurred to the second amended complaint, first, on the ground that it did not state a cause of action, and, second, that such an action could not be maintained except by or on behalf of all the stockholders of the dissolved corporation.

The demurrer to the complaint was sustained, and the action dismissed May 27, 1939, and judgment entered accordingly on May 31, 1939. On the same date plaintiff filed notice of appeal.

In the meantime counsel for plaintiff in action 15,862 of the district court, on January 17, 1938, filed a motion in that court to ''abrogate the order appointing Pigott receiver.'' It will be remembered that the order appointing Pigott was made and entered in May, 1934. This motion to ''abrogate'' therefore was made more than three years and eight months after the order the motion sought to abrogate was made. The motion to abrogate was denied May 23, 1938, but January 12, 1939, it appears that the court, on its own motion, by a minute entry, annulled the order of May 23, 1938, which would, if it were a proper minute entry and not made too late, leave plaintiff's motion of January 17, 1938, to abrogate, not determined. Shortly after the order of January 12, 1939, was entered, or on January 18, 1939, the Union Bank & Trust Company filed a petition in this court praying for a writ of certiorari to review the acts of

the district court by which that court attempted to abrogate its order appointing the receiver. An alternative writ and order to show cause was issued, and, the hearing in that proceeding resulted in the decision entitled *State ex rel. Union Bank & Trust Co.* v. *District Court,* 108 Mont. 151, 91 Pac. (2d) 403, wherein it was held that the trial court exceeded its jurisdiction by expunging or "abrogating" its order of January 12, 1939, heretofore mentioned, on the ground that the motion came too late, denied plaintiff's motion to quash the writ of certiorari in the proceeding before us, and further held that the question as to the legality of the appointment of the receiver was *res judicata,* as heretofore mentioned. That conclusion logically followed failure on the part of the losing party to exercise the right of appeal provided by subdivision 2 of section 9731, Revised Codes.

Adverting now to the proceedings had in the controversy, punctuated on its tortuous way by the proceeding by certiorari just mentioned, and the proceedings had in the district court that gave rise to the proceedings by certiorari, when the trial judge sustained the demurrer and entered judgment of dismissal under date of May 31, 1939, the plaintiff gave notice of appeal from that decision and thereafter perfected such appeal, and the matter was heard by this court May 28, 1940, decision rendered therein July 8, 1940; that opinion was withdrawn after further consideration of the case on motion for rehearing and in lieu thereof the opinion of December 7, 1940, reported as case number 8,065 was filed. The substituted opinion, as reported, appears as *Word* v. *Union Bank & Trust Company,* 111 Mont. 279, 107 Pac. (2d) 1083. By that decision we reversed the trial court, and remanded the cause with directions to the lower court to overrule the demurrer.

Briefly the foregoing is the background of the controversy.

When the matter came up before the trial court on the remittitur, in case 8,065, supra, the action was set for trial with a jury for May 15, 1941. May 29, 1941, the trial judge, the Hon. R. E. McHugh of the Third Judicial District, made a

minute entry mentioning the fact that the plaintiff contended for a jury trial and the defendants for a trial before the court without a jury, recited the fact that rule XIII of that court provides that causes to be tried without a jury shall be set when a jury is not in attendance, and it appearing to the trial judge from the pleadings in the case that the action was of equitable nature and should be tried by the court, ordered the cause stricken from the trial calendar and set for trial before the court when a jury was not in attendance. Thereupon the plaintiff commenced the proceeding mentioned in the first paragraph of this dissent.

In order to refresh our minds as to the appropriate functions of writs of supervisory control, prohibition, etc., we quote at length from the opinion of this court, speaking through Mr. Justice Holloway, in *State ex rel. Bonners Ferry Lumber Co.* v. *District Court,* 69 Mont. 436, 222 Pac. 1050, wherein this court reviewed its former holdings in proceedings in which its supervisory powers were involved. It was there said: "Assuming, for the purposes of the application only, that the trial court erred in its ruling upon the motion, we are confronted with the inquiry: Should this court interfere prior to a trial of the cause upon the merits? * * *

"In *State ex rel. Moore* v. *District Court,* 25 Mont. 31, 63 Pac. 686, the supervisory power of this court was invoked to compel the district court of Silver Bow county to sustain a motion for judgment on the pleadings in an action pending therein. The application was denied, and in the elegantly concise language of Mr. Justice Pigott the court said: 'The application is plainly so devoid of even the semblance of merit that its further consideration is needless.'

"In *State ex rel. Hennessy* v. *District Court,* 26 Mont. 274, 67 Pac. 625, the writ was sought to annul an order of the trial court refusing the petition of a litigant for a survey and inspection of the underground workings of a mine. In denying the application the court said: 'The question involved, if properly reserved, may be reviewed on appeal from the judgment

finally rendered in the cause, and no exigency is shown requiring immediate interference by this court.'

"In *State ex rel. Harris* v. *District Court*, 27 Mont. 280, 70 Pac. 981, the writ was sought to correct the alleged error of the district court in sustaining an objection to the introduction of evidence in the case of *Harris* v. *Root*. The application was denied, and this court said: 'The writ of supervisory control cannot be successfully invoked, for it may be employed only in exigent cases to remedy manifest wrongs which cannot be otherwise righted. [Citing cases.] Should the writ issue upon the present application, it would lie to correct each and every mistake of district courts, and in great measure supplant the ordinary appeal. Such is not its office.'

"In *State ex rel. Shores* v. *District Court*, 27 Mont. 349, 71 Pac. 159, the supervisory power of this court was invoked to annul an order of the district court refusing a continuance in a disbarment proceeding. In denying the application we said: 'To arrest the proceeding and compel a postponement would require this court to anticipate an adverse judgment by the trial court, while, if such result was to be anticipated, it will follow in any event, and a review on appeal be thus made necessary. It is true that an adverse judgment would perhaps fix the status of Mr. Shores with reference to his office in the meantime, so that he could not engage in practice; the statute apparently making no provision for a stay of the judgment. Still such, or a similar wrong, is one of the incidents of every erroneous judgment, and the possibility of its occurrence does not justify the interference by this court in the proceedings prior to judgment; otherwise every manifest wrong during the course of a trial in a district court would justify such interference. For example, if a district court should refuse to sustain a demurrer to an information or an indictment which did not state an offense, or to a complaint on the ground that it did not state a cause of action, when it did not, this would be a manifest wrong, yet this situation may and does frequently arise. Interference in this case would open the door for a

like interference in the cases used for illustration, with the result that this court would be constantly employed in the hearing and determination of applications like the one under consideration; thus rendering useless, in great measure, its appellate jurisdiction. This may not be done. If the judgment in the case should be adverse, an appeal from it would furnish a remedy as complete and adequate as the court can furnish in any case, and would be preventive of any wrong whatever except such as would be an incidental result of any erroneous judgment, for which, owing to the imperfection of human institutions, no remedy has as yet been devised, except to correct it by the ordinary procedure in the trial court, or upon review by the appellate court.'

"In *State ex rel. Clark* v. *District Court*, 30 Mont. 442, 76 Pac. 1005, this court was asked to employ the writ of supervisory control and annul an order of the district court of Silver Bow county refusing to transfer a criminal case from one department of the court to another department for trial. In denying this application this court said: 'The power of this court now invoked was vested in it, not for the purpose of interfering at every stage of the proceedings in the district court, and directing the conduct of the business there, but only under extraordinary circumstances, where there is no other remedy, and a party litigant is, by some wrong committed by the court, liable to suffer irreparable injury. In this case it does not appear that, if the court proceeds to a determination of the accusation, the relator will suffer any injury or wrong for which an appeal will not furnish him an adequate remedy. It is true that, if found guilty, he will be ousted from office pending his appeal to this court, and such result will fix his status in the meantime. The possibility of this result, however, does not justify this court in using its extraordinary power to grant him relief. This court cannot anticipate that he will be convicted, or that during the progress of the trial he will not have afforded to him every opportunity to make his defense. If it be prejudicial for Judge Harney to sit in the

cause and try it in violation of the rule, such error would be available on appeal, and would result in a reversal of the judgment.'

"In *State ex rel. Heinze* v. *District Court,* 32 Mont. 579, 81 Pac. 345, the writ was sought to prevent the district court striking a pleading from the files. The application was denied, and we said: 'The writ of supervisory control is one to be seldom issued, and then only when other writs may not issue and other remedies are inadequate, and when the acts of the court complained of as threatened will be arbitrary, unlawful, and so far unjust as to be tyrannical.'

"In *State ex rel. Butte Land & Investment Co.* v. *District Court,* 37 Mont. 226, 95 Pac. 843, the applicant sought to have this court annul an order of the district court refusing to revoke the appointment of a referee. In declining to interfere, this court said: 'Suppose the district court erred in its interpretation of the contract and the defendant had been compelled to produce its books after such error. These are all matters that may occur in any case and must be corrected, if at all, on appeal.'

"In *State ex rel. Grogan* v. *District Court,* 44 Mont. 72, 119 Pac. 174, the writ was sought to annul a judgment. The application was denied because other efficient remedies were available, and this court said: 'The supervisory power of this court was examined, and its functions tentatively defined, in *State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395. It has been invoked in many cases since that decision was rendered, but has always been confined in its use to exigencies arising during the progress of litigation in inferior courts, to remedy manifest wrongs which cannot otherwise be righted, and which will result in irreparable damage unless relief is granted.'

"In *State ex rel. Nipp* v. *District Court,* 46 Mont. 425, 128 Pac. 590, Ann. Cas. 1916D, 256, the purpose of the application was to have this court by the exercise of its power of supervisory control vacate an order of the district court awarding the custody of a minor child. We declined to interfere and said:

'The purpose of this proceeding [supervisory control] is not to correct mere error within jurisdiction, except in so far as this is necessary in order to prevent irreparable injury to a litigant resulting from arbitrary or oppressive action by the inferior court.'

"In *State ex rel. Topley* v. *District Court,* 54 Mont. 461, 171 Pac. 273, the writ was sought to annul an order refusing to set aside a decree of divorce. The application was denied, and the court said: 'The order referred to is appealable; the time for appeal has not expired, and will not expire for yet a little while. No hardship peculiar to the case or different from that suffered by all appellants is presented, and the special interest in the state claimed as sufficient to warrant this interposition would justify a motion to advance. This proceeding will not lie unless there is no appeal or the remedy by appeal is inadequate (*In re Weston,* 28 Mont. 207, 72 Pac. 512; *State ex rel. Carroll* v. *District Court,* 50 Mont. 428, 147 Pac. 612); and we cannot permit it to be used as a convenience or shorter route to precedence over other causes equally entitled to our consideration.'

"In *State ex rel. Hubbert* v. *District Court,* 54 Mont. 472, 171 Pac. 784, the supervisory power of this court was invoked to have annulled an order of the district court refusing to vacate an order appointing a receiver. It was held that the remedy by appeal was plain, speedy, and adequate, and the application was denied.

"In *State ex rel. Peel* v. *District Court,* 59 Mont. 505, 197 Pac. 741, it was said: 'The writ of supervisory control is in the nature of a summary appeal, and the last refuge whereby relief may be had. It will issue only when there is no other plain, speedy or adequate remedy at law by appeal or other constitutional writ,'—and that language was quoted approvingly in *State ex rel. Rubin* v. *District Court,* 62 Mont. 60, 203 Pac. 860.

"The foregoing cases will suffice to indicate the general character of the power of supervisory control and the limitations

upon its exercise. If the present application be granted, no valid excuse could be offered for refusing a like application to review any alleged erroneous ruling of a trial court from the time an action is instituted until the final judgment is rendered, and, if such procedure were once adopted and followed, the time of this court would be consumed in hearing and determining such applications, with the result that the appellate jurisdiction would be destroyed for all practical purposes.''

I think a review of this very able opinion is particularly advisable at this time in view of the fact that there is an ever increasing tendency to seek redress in litigation by coming to this court without seeking remedies available in the tribunals, the district courts, designed by the Constitution and statutes as courts of original jurisdiction for the trial of both legal and equitable actions. This court, in reality, is vested with no powers of original jurisdiction to try or to control litigation between private parties. Both its appellate powers and its powers of supervisory control are confined to the review of the decisions and rulings of ''inferior'' courts, in the manner and only to the extent prescribed by law.

In my opinion it would be premature and clearly erroneous for this court in this proceeding to deny the right of the district court to proceed with the trial in cause number 15,862, supra, in such manner as the trial judge, in his discretion may choose, for the reason that two important rules of law are involved here, the determination of which should govern our decision in the action. Neither of these questions have been brought in issue here but they involve jurisdiction and may not be ignored. First, the statutes and numerous decisions of this court deny plaintiff's right to the writ of prohibition, and such a writ is what, in part, plaintiff seeks. Section 9861, Revised Codes, provides: ''Prohibition defined. The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, whether exercising functions judicial or ministerial, when such proceedings are

*without* or in *excess of the jurisdiction* of such tribunal, corporation, board, or person."

Mr. Justice Hunt, speaking for the court in *State ex rel. Boston & Montana Consolidated, etc., Mining Co.* v. *Second Judicial District*, 22 Mont. 220, 231, 56 Pac. 219, 223, in outlining the rule applicable to a writ of prohibition, mindful of statutory provisions, said: "The writ of prohibition is to arrest the proceedings of any tribunal when such proceedings are without or in excess of the jurisdiction of such tribunal. (Code Civ. Proc., sec. 1980.) It is a process by which our court, or any superior court, prevents a district court, or any inferior tribunal, from exercising jurisdiction with which it has not been vested by law." We are definitely committed to this rule both by legislative Act and court decisions. (*State ex rel. Spalding* v. *Benton*, 12 Mont. 66, 29 Pac. 425; *State ex rel. Scharnikow* v. *Hogan*, 24 Mont. 383, 62 Pac. 583; *State ex rel. Heinze* v. *District Court*, 32 Mont. 394, 80 Pac. 673; *State ex rel. Myersick* v. *District Court*, 53 Mont. 450, 164 Pac. 546; *State ex rel. Barnes* v. *District Court*, 59 Mont. 491, 197 Pac. 565; *State ex rel. Anaconda Copper Mining Co.* v. *District Court*, 25 Mont. 504, 65 Pac. 1020; *State ex rel. Mueller* v. *District Court*, 87 Mont. 108, 285 Pac. 928; *Boucher* v. *St. George*, 88 Mont. 162, 293 Pac. 315; *State ex rel. Hauswirth* v. *Beadle*, 90 Mont. 24, 300 Pac. 197; *State ex rel. Sands* v. *District Court*, 95 Mont. 427, 26 Pac. (2d) 970; and *State ex rel. Putnam* v. *District Court*, 109 Mont. 223, 95 Pac. (2d) 441.)

In the case of *State ex rel. Myersick* v. *District Court*, supra, Mr. Justice Holloway, speaking for the court, used this language: "The writ of prohibition is an extraordinary judicial writ which issues, not as a matter of right, but only in the sound legal discretion of the court. (*State ex rel. Lane* v. *District Court*, 51 Mont. 503, 154 Pac. 200, L. R. A. 1916E, 1079.) It is to be used sparingly for the furtherance of justice and to secure order and regularity in the inferior tribunals. It arrests proceedings of a judicial character when such proceedings are without or in excess of jurisdiction (Rev. Codes,

sec. 7227), but it issues only when there is not a plain, speedy and adequate remedy in the ordinary course of law (Rev. Codes, sec. 7228; *State ex rel. Browne* v. *Booher,* 43 Mont. 569, 118 Pac. 271). The applicant must therefore assume the burden of showing that the court below is acting without or in excess of jurisdiction, and also that he has no plain, speedy, and adequate remedy in the ordinary course at law." In my opinion this so clearly expresses the rule that governs the instant case that further comment, on the point that prohibition does not lie here, is unnecessary. The citations also make clear that the writ of prohibition, and its counterpart, the writ of mandamus, should be used only when there is no plain, speedy and adequate remedy by appeal.

In passing, the fact is noticed that the language of plaintiff's prayer indicates that both a writ of prohibition and a writ of mandamus is desired. In the first part a writ is prayed for prohibiting the trial judge from proceeding with the hearing of the action in the district court and relatrix further prays that the oder setting the case down as an equity case be annulled, and then prays that the court be directed to set the case and proceed to hear it with a jury. Thus the remedy asked for is a combination of a writ of prohibition and a writ of mandamus. It is doubtful about its being either correct or appropriate to direct both negative and affirmative action in a proceeding such as this, but from my view of the case it is not necessary that that question be considered here.

The second question involves the power vested in, and the wisdom of, this court acting within its discretionary power to override the discretionary power of a district judge to manage, control and direct legal business in his own court, subject of course, always to a litigant's inherent right of appeal. I proceed on the assumption that no one will question the assertion that broad discretionary powers are vested in our district courts and that the judges thereof are subject to control under the supervisory powers of this court only when that discretion is exercised unlawfully, or is abused in some manner.

In the case of *State ex rel. Anaconda Copper Mining Co.* v. *District Court*, supra, Mr. Chief Justice Brantly, speaking for the court on the question of the use of the writs of mandamus and certiorari, said at page 523 of 25 Mont., at page 1027 of 65 Pac.: "By the former this court may coerce into activity [a district judge], *but it may not be used to control discretion, or correct errors.* By the latter an order made without or in excess of jurisdiction may be annulled or modified when there is no appeal or other adequate remedy. It cannot be used to correct errors of judgment in the exercise of jurisdiction. It could not be invoked to annul the order in question, for the reason that the order was made in the exercise of jurisdiction."

While there are authorities to the contrary, I am satisfied beyond a reasonable doubt that the supervisory powers vested in this court by our Constitution were never intended to be exercised to override the broad discretionary powers of a district judge. While I think there is an abundant authority in decisions of this jurisdiction for this conclusion, I am particularly impressed with the reasoning employed in such cases as *In re Louis A. M. Phelan*, 225 Wis. 314, 274 N. W. 411, 415, 112 A. L. R. 1345, and will quote therefrom briefly. After reviewing a number of cases in which the questions of the supervisory powers of the highest appellate courts were referred to, it was there said: " * * * It is clear that this court in exercising its superintending control will not use that power lightly. It will not be exercised when the remedy by appeal or writ of error is substantially adequate. It will not be permitted to perform the office of an appeal. It will be used to prevent irreparable mischief, great, extraordinary, or exceptional hardship, and great burdens in the form of expenses. The court will exercise the power upon sufficient occasion, especially where the fundamental rights of a party or parties are ignored. *The power will not be exercised to control the discretion of another court.*"

The same view is expressed more at length in the case of *Swanson* v. *Alworth*, 159 Minn. 193, 198 N. W. 453, which is

on all fours with the case at bar in so far as the mandatory features of such a writ are concerned, and in the instant case it is worthy of being quoted from at length:

"Appellate courts exist for the purpose not of supervising and directing but of reviewing and correcting the work of the trial courts.

"Therefore, while the writ of mandamus is used to compel judicial action, it should refrain always from any attempt to direct the manner of such action. It is designed to compel the performance of duty. *But where the officer or tribunal subjected to the writ has any judgment or discretion with respect to the manner of performing a duty, the tribunal from which the writ issues does not attempt to control the exercise of that judgment or discretion.* \* \* \*

"In *Ex parte Mason,* [8 Cir.] 244 Fed. 154, 156 C. C. A. 582, where there was presented about the same situation that now confronts us, the Circuit Court of Appeals refused to issue a writ of mandamus directing the District Court to grant a jury trial, and said, *inter alia*:

" 'A consideration of the function of the writ of mandamus and an examination of the authorities upon this subject leave no doubt that the established rules for its use are these: The writ issues to compel the performance of a plain duty. Where that duty is the exercise of judgment or discretion by an officer in the decision of a question of law or fact, or both, it may issue to compel a decision, but it may not command in what particular way that decision shall be rendered, or by what rules it shall be reached. When a question within his jurisdiction has been decided by the officer or person to whose judgment or discretion the law has intrusted its determination, the writ of mandamus may not issue to review or reverse that decision, or to compel another.'

"It follows that the writ must be discharged. No other result could be reached without a violation of rules of practice and of law long in vogue and uniformly followed.

"The interlocutory orders of trial courts cannot be reversed by mandamus. 'Mandamus is not available as a remedy in review.' (*Mingo* v. *Holleran,* 153 Minn. 521, 191 N. W. 416.) Were it otherwise, every calendar call of the district court might be a very prolific added source of appeals. The increased loading of litigation with expense and delay would be intolerable. * * *

"It would be a frustration of the statute to substitute mandamus for the appeal thus denied. If here, or in any similar case, a jury trial is denied where the party seeking it is entitled to it under the Constitution, the error can be corrected by review on appeal. * * *

"Jurisdiction is the power to decide, and necessarily it confers the power to decide wrongly. It is the power so to decide 'every issue of law and fact conditioning * * * ultimate adjudication.' *United States* v. *Brown,* [8 Cir.] 281 Fed. 657. Here, the issue as to the method of trial is preliminary.

"It has been decided below. If the decision be erroneous, it can be corrected on appeal."

On the authority of the various cases quoted from and our statutes the alternative writ should be quashed and the permanent writ denied and the matter remanded to the district court for such further proceedings as that court, in its discretion, may deem appropriate.

Rehearing denied October 20, 1941.