No. 23,983.

THE FARMERS STATE BANK OF GALVA, *Appellant,* v. L. E. BRACEY, *Appellee.*

### SYLLABUS BY THE COURT.

APPEAL AND ERROR—*Judgment Complied With—Waiver of Right of Appeal.* The action was one to recover on a promissory note. The defense was, the note had been procured by false representations, and the plaintiff was not an innocent holder. The defendant prevailed, and judgment was rendered against the plaintiff for costs. The plaintiff appealed, and afterwards paid the costs. *Held,* the appeal must be dismissed.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed February 10, 1923. Dismissed.

*J. M. Grattan,* of McPherson, *Henry E. Ganse, Gilbert H. Frith,* and *Louis F. Clevenger,* all of Emporia, for the appellant.

*R. M. Hamer,* and *O. T. Atherton,* both of Emporia, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a promissory note. The defense was, the note had been procured by false representations, and the plaintiff was not an innocent holder. The defendant prevailed, and the plaintiff appeals.

Painter was cashier of the bank, and in active management of its affairs. Munn was a director. Bracey was a farmer, living near Galva. By means admitted to have been fraudulent, Munn sold to Bracey ten shares of the corporate stock of the Bankers Mortgage Company, taking in payment of the price a promissory note for $1,500, in which the bank was named as payee. Munn delivered the note to the bank, and was credited with the amount of it. At maturity of the note, a renewal note was given, and the action was based on the latter instrument. The cause was tried to a jury, which returned findings of fact, and a general verdict for the defendant. The judgment read as follows:

"Wherefore, it is ordered and adjudged by the court that the defendant have and recover of and from the plaintiff his costs taxed at $37.60."

It is conceded the judgment included costs made by the defendant. Some time after judgment, the clerk of the court mailed to the bank a bill of costs amounting to $37.60, giving credit for the deposit to secure costs in the sum of $25. The cashier remitted the balance to the clerk, who distributed the costs, and receipted in full to the bank. The defendant moves to dismiss the appeal.

The writer is able to appreciate the feelings of the attorney for the bank when he was confronted with the motion to dismiss. In the case of *York v. Barnes*, 58 Kan. 478, 49 Pac. 596, he was associated with attorneys who succeeded in defeating a tax deed. The court, however, required our client to pay the taxes. He was anxious to close up the litigation, and paid the money into court. The tax-deed holder appealed. Believing the particular circumstances were such that our client ought not to reimburse the tax-deed holder, we appealed. This is what the court said:

"The defendant, having voluntarily complied with the judgment so far as it is adverse to him, and having paid the money into court for the use of the plaintiff, is in no position to insist on errors in its rendition." (p. 480.)

The principles involved was announced and applied as early as 1874, in the case of *Babbitt v. Corby, Adm'x,* 13 Kan. 612. In that case, Babbitt claimed title to land under tax deeds. The deeds were

set aside, and he was given a lien for taxes. He appealed, but afterwards accepted the money adjudged to be due him. In dismissing the appeal the court said: .

"By voluntarily accepting the proceeds of the judgment, the plaintiff in error waived any errors, if errors there were, in it. A party who complains of a judgment must be consistent in his conduct with reference to it. If he recognizes its validity, he will not be heard to say that it is invalid." (p. 614.)

In the Babbitt case, the appellant recognized validity of the judgment by accepting its benefits. In the York-Barnes case Barnes recognized validity of the judgment by accepting its burden and paying it.·

The cashier pleads ignorance of the consequences of his conduct, and the board of directors of the bank declares it had no intention of abandoning the appeal. In no case in which an appeal has been dismissed was it the intention of the party recognizing validity of the judgment to prejudice his appeal, and in several instances the intention not to prejudice the appeal was expressly declared. In the case of *The State v. Conkling,* 54 Kan. 108, 37 Pac. 992, the defendant was adjudged guilty of contempt of court for obstructing a ·receiver, and was sentenced to pay a fine and to stand committed until fine and costs were paid. After his motions for new trial and in arrest of judgment had been denied, he paid the fine and costs, under protest, and declared he reserved the right to appeal. In dismissing his appeal the court said:

"It appears that the sentence of the law has been executed, and nothing is left for further controversy. By his own act, Conkling has satisfied and discharged the judgment entered against him. His protest and attempt to reserve the right of appeal are unavailing. The statute does not provide for nor contemplate an appeal from a discharged judgment." (p. 108.)

In the case of *Crouse v. Nixon,* 65 Kan. 843, 70 Pac. 885, members of a canvassing board complied with a peremptory writ of mandamus to count votes and certify the result. Two members made the count and certificate, under written protest, and appealed. In dismissing the appeal the court said:

"It is not necessary for us to examine into the merits of the case, or, more accurately speaking, we cannot do so. The plaintiffs in error have appealed from an order to which they had already yielded obedience. That they cannot do. They cannot perform the required act and at the same time appeal from the order requiring its performance." (p. 845.)

In the cases of *Waters v. Garvin* and *Waters v. Clyne,* 67 Kan. 855, 73 Pac. 902, actions were commenced to enjoin collection of

taxes. Demurrers to answers were sustained, and judgments for costs were rendered thereon in favor of the plaintiffs. The board of county commissioners allowed the costbills, and ordered them paid, on condition the sums should be paid back if the judgments should be reversed. In dismissing the appeals the court said:

"If the board of county commissioners had intended to preserve the rights of the county to prosecute proceedings in error to this court, it should not have complied with the judgment of the court by paying the costs in the actions. After having done so there is no question open for dispute between the parties. The judgment of the court below having been complied with, nothing is left to litigate in this court. The conditions under which the costs were paid, that if the cases should be reversed and the costs collected from plaintiffs that they should be repaid to the county, does not serve the purpose of keeping the causes pending nor the judgments, the validity of which the board recognized by complying therewith, open." (p. 855.)

In the case of *Fenlon v. Goodwin*, 35 Kan. 123, 10 Pac. 553, the plaintiff attached property. The court discharged the attachment, and the plaintiff appealed. Afterwards he released the property. In dismissing the appeal, this court said:

"The plaintiff has elected to end the controversy, and by his voluntary act has yielded all that was sought in the application for a dissolution of the attachment. He has ratified and affirmed the order of the district judge. The thing commanded to be done in the order made by the judge has since been voluntarily done by the plaintiff, and thus he has confessed that the order was rightfully made, and has thereby waived any error that may have occurred." (p. 125.)

In the case of *Round v. Power Co.*, 92 Kan. 894, 142 Pac. 292, the action was one to recover land or its value. A demurrer to the plaintiff's evidence was sustained, and judgment was rendered against him for costs. He paid the costs, and appealed. In dismissing the appeal, the court said:

"Performance of the judgment by the payment of the costs in effect ends the litigation, as an appeal does not lie from a judgment which has been performed." (p. 895.)

In the case of *Seaverns v. The State*, 76 Kan. 920, 93 Pac. 163, the subject of consistency in attitude toward a judgment complained of was considered at length, and all previous decisions of the court were collated. In the opinion it was said:

"Quite early in the history of this court the position was taken that a party who complains of a judgment must be consistent in his conduct with reference to it, and if he recognizes its validity or acts contrary to the assumption that it is erroneous he will not be heard to say on appeal that it is

erroneous. (*Babbitt v. Corby, Adm'x,* 13 Kan. 612.) In applying this rule less liberality of conduct has been permitted to appellants than many other courts of last resort are disposed to allow when dealing with the same subject, but manifestly the case must be determined according to those principles, which have long been adopted and followed here." (p. 921.)

It is suggested that the act of the cashier amounted to a compromise or release of claim, which required special authority from the board of directors. The cashier did not compromise or release any claim of the bank. In the course of its business he paid one of its bills. It is not contended he might not do this, and having made him executive officer of the bank and put him in charge of its business, the board of directors is not in position to ask immunity from consequences of his incompetency.

In perusing the record, the court has received certain impressions respecting the merits of the case. Fraud in procuring the original note is admitted, and it devolved on the bank to clear its skirts. The only testimony in its behalf which is abstracted was given by its cashier. Evidently he was not believed, and apparently for good reason. Therefore, the *prima facie* case established by proof of fraud, that the bank had guilty knowledge of the infirmity in the paper when it cashed it, was not overcome. This being true, it is not necessary to inquire into the soundness of the findings of the jury on that subject. It may be conceded the jury had no evidence of specific facts on which to base findings that the bank did have notice, and that the findings returned were speculative. The law made a provisional finding of notice to the bank from the fraud, and this finding stood until the plaintiff proved absence of notice by reliable evidence.

The plaintiff's brief is framed on the erroneous theory that the defendant was obliged to prove the bank had actual notice of the fraud, as appears from the following extracts:

"To constitute a defense against this bank, it was incumbent upon appellee to prove, first, that the bank knew before it purchased the note of the transaction between appellee and Munn, and second, that it knew what representations had been made by Munn to appellee in that transaction, and third, that it knew that the representations of Munn to appellee were fraudulent and untrue. . . .

"Appellee had a fair opportunity to introduce any evidence that he had to show that the bank had knowledge of the fraud. We think he failed absolutely in his proof, and if he did, this court should do what the trial court should have done, direct a verdict for the bank."

So much has been said about the merits of the case because the principles of law involved are not open to debate. The interesting question, not heretofore decided by this court, whether, if otherwise innocent, the bank might be a holder in due course of a note taken directly to it in a transaction of sale between third persons, must be left open, because, for reasons which have been stated, the appeal must be dismissed.

The appeal is dismissed.