UNION BANK & TRUST COMPANY OF HELENA, RESPONDENT, *v.* PENWELL ET AL., APPELLANTS.

(No. 7,390.)

(Submitted March 4, 1935.   Decided March 14, 1935.)

[42 Pac. (2d) 457.]

*Mr. R. Lee Word,* for Appellants, submitted an original and reply briefs and argued the cause orally.

*Messrs. Gunn, Rasch, Hall & Gunn,* for Respondent, submitted an original and supplemental briefs; *Mr. M. S. Gunn* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This matter occurs upon the motion of respondent to require the attorney for the appellants to produce and prove his authority to appear for them, and upon a motion to dismiss the appeal.

The main proceeding relates to a receivership appointment made by the district court of Lewis and Clark county. Beaverhead Ranch Company was a corporation organized under the laws of the state of Montana. Its charter and its corporate existence expired by limitation on September 24, 1927. At the time of their expiration Lewis Penwell, C. B. Witter, R. Lee Word, H. H. Pigott and Mathias Staff were the directors, and upon the expiration of the charter the directors, as trustees under the statute, proceeded to administer the affairs of the corporation. In January, 1934, the Union Bank & Trust Company, of Helena, filed a complaint in the district court under the liquidating statutes of the state, praying for the appointment of a receiver to take charge of the property of the corporation and liquidate and distribute the same. The action was apparently predicated upon the provisions of our statutes relative to the liquidation of the business of dissolved corporations, particularly section 6011, Revised Codes 1921, as amended by section 2, Chapter 8, of the Laws of 1931, and other pertinent statutes. It was prosecuted upon the theory recognized and discussed by this court in *Mieyr* v. *Federal Surety Co.,* 97 Mont. 503, 34 Pac. (2d) 982, affirmed by the United States Supreme Court, *Clark* v. *Williard,* 55 Sup. Ct. 356, 79 L. Ed. 363. A receiver was appointed, not in an ancillary proceeding, but in a direct action brought for the purpose under the liquidating statutes of the state.

The complaint alleges the fact of the incorporation of the ranch company; the expiration of its charter; that at the time of the dissolution thereof the corporation was indebted to the plaintiff bank in excess of the sum of $30,000; that since the dissolution the indebtedness has been increased to over $42,000; that the property consisted of livestock and other personal property, and a large acreage of land; that the taxes upon the lands and other property had not been paid and, together with interest and penalties, amounted to several thousand dollars; that the trustees had not taken any action, or made any effort, to settle and liquidate the affairs of the corporation, but had continued ranch operations at a loss; that the trustees had no money with which to pay taxes or current expenses, or to protect and preserve the property of the trust; and that it was to the best interests of all concerned, including creditors and stockholders, that a receiver should be appointed to wind up and settle the affairs of the corporation.

To this complaint R. Lee Word, one of the directors at the time of the expiration of the company's charter and one of the trustees thereafter, in due time filed an answer for all of the trustees, and the matter came on for hearing. The answer denied the necessity for the appointment of a receiver, and alleged a considerable amount of defensive matter in connection therewith. At the hearing before the court, four of the directors appeared. Trustee Word appeared for himself and the other trustees and vigorously opposed the appointment of a receiver, although he was not sworn and did not testify in the matter. Trustee Penwell testified at considerable length. He was asked the following question: "Have you, as one of the directors, any objection to the appointment of a receiver in this case?" He answered: "No, the understanding was that Mr. Pigott would be appointed, and with that understanding there would be no objection whatever." Trustee Pigott testified that he did not see how he could have any objection to the appointment of a receiver, and that he consented thereto. Trustee Witter testified that he did not see any other method of winding up the affairs of the company, and that he had

no objection thereto. The three trustees were vigorously cross-examined by their fellow trustee, Word, who was appearing for all of them. Other evidence was introduced by the bank to show necessity for the appointment of a receiver and to demonstrate that the affairs of the corporation or trust were not being looked after and conducted according to law and so as to protect the property from loss and destruction.

After the testimony was closed, a written request by four of the trustees was filed, as follows: ''If application for appointment of receiver is granted herein, we respectfully request that H. H. Pigott be appointed, and hereby consent to his appointment.'' This request was signed by the plaintiff bank and four of the trustees. The record shows that trustee Word objected to the appointment of Pigott as receiver. Thereafter the court made and caused to be entered an order appointing H. H. Pigott, one of the defendants, as receiver. This order recited the fact of the hearing and found that this was a proper case for the appointment of a receiver, ''and that it is to the interest of the creditors and stockholders of the Beaverhead Ranch Company that a receiver should be appointed to settle and liquidate the affairs of said company, a dissolved corporation, and the plaintiff and majority of the defendants, who were the trustees of the corporation at the time of its dissolution and became the trustees of the creditors and stockholders, having filed their written consent to the appointment of H. H. Pigott, one of the defendants as receiver, it is ordered,'' etc. Mr. Pigott's bond was fixed by the court, and he qualified and proceeded to act as receiver ever since the date of his appointment, which was on May 12, 1934.

Thereafter R. Lee Word, the objecting trustee, filed a notice of appeal on behalf of himself and the other trustees, and proceeded to perfect an appeal to this court. Before the expiration of the time for filing its brief, the plaintiff bank, through its attorney, appeared in this court and presented a motion to require Mr. Word, attorney for appellants, to produce his authority. This motion set forth that the appeal had been taken from the order appointing trustee Pigott

receiver, that Pigott had qualified as receiver and furnished a bond, that appellants Pigott, Witter, Staff and Penwell and the respondent bank had all consented to the appointment; and was accompanied by written statements of the four trustees just named, to the effect that they had not authorized nor directed an appeal to this court on their behalf. Thereupon this court caused its order to be issued directed to attorney Word, requiring him to produce and prove before this court his authority to represent the other appellants in the matter of the appeal. The matter was set for hearing and was argued by attorney Word and one of the attorneys for respondent bank. Before the date of the argument, a motion to dismiss the appeal was also filed and was likewise argued at the time of the hearing on the order to show authority. Before the argument, Mr. Word filed a motion to quash the order herein issued; the motion was predicated upon the ground that the order had been improvidently issued by this court, and particularly that the motion upon which the order was issued should have been made in the lower court. There was attached to the motion to quash an affidavit of the movant. This affidavit may be considered as an answer and as showing such authority as attorney Word possessed in the matter of representing the appellants on the appeal. It sets forth that affiant Word had been a director of the Beaverhead Ranch Company and was its vice-president when its charter expired; that he had represented the corporation. at various times; that he was president of a subsidiary corporation connected therewith; that he had been consulted about the affairs of the corporation from time to time during its existence and was in fact its attorney; that, after the expiration of the charter, he had proceeded with his cotrustees; and that he had differed quite vigorously from the other trustees in the conduct of affairs, particularly that he had objected to the purchase of certain sheep by the trust and had given written opinions as to the rights of the trustees. The affidavit recites facts indicating that there were great differences of opinion between Word and his fellow trustees; that these differences had existed

for some time; that the other trustees had refused to follow his advice, and, as a result thereof, had incurred additional indebtedness. In fact, the recitals contained in the affidavit seriously impugn the actions of the other directors and indicate that there were many violent differences between the trustees in the matter of the management of the property. It states that affiant did not know that his right to represent Penwell, Pigott, Witter and Staff in the proceeding had ever been questioned. It states that the answer in the district court, filed on behalf of all the trustees, was submitted to the co-trustees for approval before it was filed, and that the representation in that court was by and with the consent of all of the trustees. In passing, we may remark that, while this is technically true, the record discloses that at the hearing in the district court Word absolutely stood alone, and the three other trustees who were present appeared as witnesses for the other side and were apparently antagonistic to Word's contention before the court. The affidavit, as a whole, recites historically the relation of trustee Word to the corporation during its lifetime and to the trustees thereafter. Word does not at any place in the affidavit state that he was directed, authorized or empowered by the other trustees to take the appeal in this case or to prosecute the same on behalf of all of the trustees.

The oral arguments and those contained in the briefs extended over a broad field and were characterized by much apparent feeling and rancor. It is our opinion that the matter presented resolves itself into three propositions, which may be stated as follows:

(1) Was the order requiring Word to show his authority improvidently issued by this court?

(2) Was attorney Word authorized to take the appeal and prosecute the same on behalf of all the trustees?

(3) Assuming that Word was not authorized and is not justified in prosecuting the appeal for all of the trustees, can he maintain the appeal alone, either for himself or on behalf of all of the trustees?

At the outset, attorney Word asserts that the order issued by this court requiring him to show his authority to prosecute the appeal in question on behalf of the other trustees was improvidently issued. He claims that the respondent bank did not make a sufficient showing to justify the granting of an order requiring him to show his authority. In this connection it is pointed out that the only showing made by respondent in support of its motion consisted of letters of the other trustees wherein they stated that they had never authorized Word to prosecute the appeal. He argues that these letters and the statements contained therein were not sufficient, unless and until supported by oath or affidavit, to make it incumbent upon him to prove his authority.

There is respectable authority for the proposition that a motion attacking an attorney's authority should be supported by oath or based on affidavits showing prima facie a lack of authority. (See annotations and collection of authorities in 126 Am. St. Rep. 33, at page 43; *W. A. Gage & Co.* v. *Bell,* (D. C.) 124 Fed. 371; *Bonnifield* v. *Thorp,* (D. C.) 71 Fed. 924; *Turner* v. *Caruthers,* 17 Cal. 431.) However, regardless of what may be the rule in other jurisdictions, we think this question was set at rest by this court in the case of *Missoula Belt Line Ry. Co.* v. *Smith,* 58 Mont. 432, 193 Pac. 529, 531. The court there had under consideration a motion to require the attorney for the adverse party to produce and prove the authority under which he appeared. In the course of its opinion the court said: ''The motion by either party must, of course, be made in good faith and be supported by a showing, by affidavit or otherwise, of a reasonable cause for it. This is necessary because an attorney is presumed to have authority until the contrary is shown.'' In using the words ''or otherwise,'' the obvious intent was to relax or broaden the rule requiring that the motion must be supported by oath or based upon affidavit. Any other construction of the above language would necessarily deprive the quoted words of any force or meaning whatever. The court was evidently of the view that an affidavit should not be regarded

as absolutely essential in the showing of reasonable cause for an order requiring an attorney to produce and prove his authority; that something short of an affidavit might constitute a sufficient showing to justify the granting of such an order. This seems a reasonable conclusion, especially in view of the fact that a court may of its own motion require an attorney to produce and prove his authority. (1 Bancroft's Code Practice & Remedies, p. 44, sec. 40; note in 126 Am. St. Rep. 35; *Missoula Belt Line Ry. Co.* v. *Smith,* supra.) In the last-cited case the court further said: "Even in the absence of such a statute [sec. 8994, Rev. Codes 1921] the court has the inherent power, either on its own motion or on motion of a party to the action, to require an attorney to produce evidence of his authority whenever there is reasonable ground to apprehend that he is proceeding to act without authority of the party he assumes to represent."

In accordance with the foregoing authorities, we conclude that the showing made by respondent here was sufficient to justify an order requiring the attorney to produce and prove his authority. There is no merit in the contention that this court acted improvidently in granting that order.

We are next confronted with the question whether attorney Word has produced and proved his authority in a manner sufficient to meet and overcome the showing made by respondent in support of its motion. In treating this question it may be well first to direct our attention to certain well-established rules of law pertinent and applicable here.

In the first place, the rule is universal that, where a regularly admitted attorney appears for a party in a cause, the presumption is that such appearance is authorized. However, this presumption is not conclusive, but the fact of the authority may, in a proper case, be inquired into. (2 Mechem on Agency, sec. 2152, p. 1728; 1 Bancroft's Code Practice & Remedies, 42; 1 Thornton on Attorneys at Law, 415 et seq.) Such inquiry may be made by the opposite party to the proceedings who, having reasonable grounds to doubt the attorney's authority to appear, may apply to the court to require

him to produce his authority. (Sec. 8994, Rev. Codes 1921; Mechem on Agency, supra; Bancroft's Code Practice & Remedies, supra.)

The presumption being that an attorney appearing in court for either a plaintiff or a defendant has authority to do so, it follows that, where such authority is questioned, the burden is on the party attacking, and such want of authority must be established by positive evidence. (See note in 126 Am. St. Rep. 41, and cases cited; *United States of Mexico* v. *Rask,* 109 Cal. App. 497, 293 Pac. 108, 110.) In the last-cited case the court said: "While, as held in the later cases, the authority of an attorney to take an appeal may be questioned by a respondent, the rule is firmly established that the presumption that an attorney of record has authority to take an appeal will prevail in the absence of a clear and satisfactory showing that such authority is lacking." However, when the respondent has satisfied the burden thus resting upon him, and has shown prima facie that the attorney has no authority, it then devolves upon the attorney to show his authority, and "if it is shown that the attorney has no authority to represent the party for whom he assumes to act, he will not be permitted to act further, and if he is prosecuting the action without the permission of the ostensible plaintiff, whom he professes to represent, the action will be dismissed." (*Missoula Belt Line Ry. Co.* v. *Smith,* supra.)

All of these rules are generally recognized and followed by the courts everywhere. See the following text treatments of the subject and the numerous cases cited therein: 2 Mechem on Agency, sec. 2152, p. 1728; 1 Thornton on Attorneys at Law, 413 et seq.; 1 Bancroft's Code Practice & Remedies, 41 et seq.; 6 C. J. 630 et seq.

Applying the above rules to the instant case, little difficulty is encountered in disposing of the question here under consideration. As we have already observed, the respondent did make a sufficient showing (the letters of the trustees whom Word purports to represent) to put the attorney upon his proof to show in some manner that he has authority

to prosecute the appeal in question. It then devolved upon him to produce and prove his authority. He filed an affidavit in which he purported to do so, i. e., the statements in the affidavit that he had for many years acted for the trustees in all legal matters pertaining to the trust property; that his cotrustees knew of this and had consented that he should so act; and that they had consented to his representing them in this case in the district court. However, he did not anywhere in that affidavit say that his cotrustees had given him authority to prosecute this appeal. In the face of the showing made by respondent in support of its motion and the letters of the trustees wherein they stated that Word had no authority from them to prosecute the appeal, his general statements concerning his authority on previous occasions were not sufficient. He cites and relies upon the cases of *Missoula Belt Line Ry. Co.* v. *Smith,* supra, and *In re Miller's Estate,* 71 Mont. 330, 229 Pac. 851, in support of the proposition that "the right of said R. Lee Word to represent said appellants on this appeal not having been challenged in the district court, the right to attack it later was waived." These cases merely considered the right to challenge in the supreme court the authority of an attorney to appear in the district court. The question of authority to take and prosecute an appeal was not involved in either of them. Here no question is raised or involved concerning Word's authority to represent his cotrustees in the proceeding in the lower court. The fact that he had authority to represent them in the trial in that court did not necessarily bestow authority upon him to prosecute an appeal to this court. An attorney does not, by virtue of his original retainer to prosecute or defend an action, have authority to take and prosecute an appeal from the judgment rendered in the action. (*Slepin* v. *Beck,* 84 Misc. 254, 145 N. Y. Supp. 530; *Tobler* v. *Nevitt,* 45 Colo. 231, 100 Pac. 416, 132 Am. St. Rep. 142, 16 Ann. Cas. 925, 23 L. R. A. (n. s.) 702; *Hooker* v. *Village of Brandon,* 75 Wis. 8, 43 N. W. 741; *Morgan* v. *Krook,* 36 Ariz. 133, 283 Pac. 287; *Tetzloff* v. *May,* 186 Iowa, 520, 172 N. W. 446.)

Word further contends that in delaying so long, both the ▮ respondent and the other trustees have waived and are estopped from asserting any right they may have had to question his authority. It is true that the objection must be made at the earliest practicable moment or the right to raise the question may be waived. (1 Bancroft's Code Practice & Remedies, 45; 2 Mechem on Agency, 1730.) However, respondent claims that it did not know of this want of authority in Word until just recently, and that it acted promptly upon being advised of that fact. There being nothing to rebut this assertion, we must accept it as true. Under such circumstances the respondent had the right to rely upon the presumption that the appeal was authoritatively commenced until it was advised to the contrary. (*Bell* v. *Farwell*, 189 Ill. 414, 59 N. E. 955.) It follows that respondent cannot be said to have waived, or to be estopped from raising, the question of Word's authority.

Word contends that, even if it be held that he has no authority to appeal for his cotrustees, he has in any event a right to appeal in his own behalf. He bases this contention upon the theory that he is a party aggrieved by the order appointing a receiver, both as an individual and as a stockholder. This line of argument is without any force, for the very obvious reason that Word is not appealing as an individual creditor or a stockholder; he is appealing only as a trustee. The only question, then, is whether he, as one of the five trustees, has a right to appeal from the order appointing the receiver, when his cotrustees refuse to join in such appeal. In treating this question, both sides spend considerable time and argument upon the question whether it is necessary that all the trustees act, or whether an act by a majority of the trustees is sufficient. In support of his contention that he does have such right, Word relies upon section 7915, Revised Codes 1921, which provides as follows: ''Where there are several cotrustees, all must unite in any act to bind the trust property, unless the declaration of trust otherwise

provides." He claims that this is the only statute which is in any way applicable to the situation here presented. Proceeding upon that assumption, he then argues that this statute does not bar him as a single trustee from prosecuting an appeal, even though his cotrustees fail or refuse to join him in that appeal, and that the taking of an appeal from the order appointing a receiver is not an act which in any way binds the trust property within the meaning of the above statute.

Respondent, on the other hand, asserts that section 7915, supra, has no application whatever in this case, but that section 14, Revised Codes 1921, and Chapter 8, Laws of 1931, are pertinent and controlling of the situation here. Section 14 provides: "Words giving a joint authority to three or more public officers, or other persons, are construed as giving such authority to a majority of them, unless it is otherwise expressed in the act giving the authority." Chapter 8, section 2, supra, provides: "Unless other persons are appointed by the court, the directors of any corporation, at the time of its dissolution, are trustees of the creditors and stockholders or members of such corporation, and have full power to settle and liquidate its affairs, and such trustees, or a majority thereof, or in case of the death of one or more of such trustees, a majority of such survivors, are authorized to execute grants and conveyances of both real and personal property of such dissolved corporation. Every such grant or conveyance shall be prima facie evidence of the truth of all matters and facts recited or stated therein."

In our opinion, it is immaterial and unnecessary to decide which of the above-quoted statutes is properly applicable in this case. All of them require that at least a majority of the trustees must act to bind the trust property. In the absence of a statute upon the point, the general rule seems to be that in the case of a private trust all the trustees must act. (See *McGready* v. *Guardians of Poor*, 9 Serg. & R. (Pa.) 94, 11 Am. Dec. 667, and note.) Irrespective of whether the act of a majority of the trustees is sufficient, it is clear that both under

our statutes and the general rule under the common law the act of one only of the trustees is not sufficient. (See 6A Cal. Jur. 1494; 1 Perry on Trusts and Trustees, p. 684, sec. 411.)

There is no merit in the contention that the taking of an appeal from the order appointing a receiver does not affect or bind the trust property. Such an appeal must affect the right of possession of and control over the trust property. It is difficult to conceive of any act that would have any greater bearing or binding force upon the trust property.

In 1 Perry on Trusts and Trustees, page 685, it is said: "If trustees bring suits, or defend suits in court, they must act jointly."

We hold that Word, as one only of the five trustees, cannot maintain an appeal from the order appointing a receiver. The appeal should be, and it is hereby, dismissed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument, and takes no part in the foregoing decision.

Rehearing denied March 27, 1935.