260 F.2d 361
 69 A.L.R.2d 684
 HAWKEYE-SECURITY INSURANCE COMPANY, Appellant,
v.
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellee.
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Cross-Appellant,
v.
HAWKEYE-SECURITY INSURANCE COMPANY, Cross-Appellee.
 Nos. 5872, 5873.
 United States Court of Appeals Tenth Circuit.
 Oct. 24, 1958, Rehearing Denied Nov. 18, 1958.
 
 Forrest C. O'Dell, Denver, Colo. (Wormwood, O'Dell & Wolvington, Denver, Colo., were with him on the brief) for appellant and cross-appellee.
 James L. Treece, Denver, Colo. (Yegge, Bates, Hall & Shulenburg, Denver, Colo., were with him on the brief) for appellee and cross-appellant.
 Before BRATTON, Chief Judge, and HUXMAN and LEWIS, United States Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 The question in this case is whether appellant, Hawkeye-Security Insurance Company, herein called Hawkeye, was guilty of bad faith in refusing to take an appeal from a judgment adverse to the interest of its insured and thus subjecting itself to liability for the costs of an appeal which was taken?
 
 Number 5872
 
 2
 Hawkeye executed a contract of liability insurance with Northern Utilities Company, herein called Northern, in which it agreed 'to pay on behalf of the insured all sums for which the insured should become legally obligated to pay as damages because of injury to or destruction of property, etc., caused by accident.' The policy also contained the usual provision requiring Hawkeye to 'defendant any suit against the insured * * * seeking damages * * * even if such suit is groundless, false or fraudulent.' The maximum coverage was $10,000. Indemnity Insurance Company, herein called Indemnity, had, in effect, its policy of indemnity to Northern indemnifying it against loss in excess of $10,000. A fire occurred in the Rafferty Mill and Fixture Company in Casper, Wyoming, as a result of which Rafferty sued Northern in the State District Court of Wyoming alleging that the fire was a result of negligence on Northern's part.
 
 
 3
 Hawkeye undertook the investigation and defense of the lawsuit under te terms of its policy. The trial resulted in judgment for Rafferty against Northern in the sum of $22,636.86. Hawkeye refused to take an appeal to the Supreme Court of Wyoming. Indemnity, the excess insurance carrier, took the appeal in the name of the insured. The judgment of the trial Court was affirmed. Indemnity paid the judgment in excess of $10,000, then instituted this action against Hawkeye to recover the cost of the appeal, including a reasonable attorney's fee. The theory of this action was that under the facts of the case, the terms of Hawkeye's policy required it to take an appeal, and failure to do so constituted a breach of its contract subjecting it to liability for the cost of the appeal to its insured, and that by reason of an appeal being taken by Indemnity, the excess insurer, it was subrogated to the rights of Northern against Hawkeye.
 
 
 4
 While the case was pending in the State trial Court, negotiations for settlement were carried on, and it is quite clear from the record that the litigation could have been settled within the maximum coverage of Hawkeye's policy.
 
 
 5
 So far as material, the Court found that Hawkeye refused the advice of its competent counsel, advising that an offered settlement of $9,000 should be accepted; that Hawkeye proceeded to trial on the advice of its counsel that no specific acts of negligence on the part of Northern could be established, and that in his opinion the doctrine of res ipsa loquitur was not applicable to the case; that at the trial, no specific acts of negligence on Northern's part were offered, but that the trial judge applied the doctrnie of res ipsa loquitur and thus overruled the motion to dismiss and for a directed verdict, and submitted the case to the jury on the theory of res ipsa loquitur. The Court found that Mr. Monroe, Hawkeye's counsel, was an experienced lawyer; that he recommended that an appeal should be taken; that in making that recommendation, he relied upon Wyoming decisions; that he still contended that in his view res ipsa loquitur did not apply to the case; that Hawkeye refused to take an appeal unless the costs thereof were prorated by the insured in accordance with the exposure of the parties, and that when the insured refused to do this, Hawkeye refused to appeal, although requested to do so, and withdrew from the case. The Court concluded that Hawkeye was not guilty of negligence or bad faith in having refused to settle the case and in going to trial in reliance on counsel's advice that res ipsa loquitur did not apply. The Court, however, concluded that Hawkeye was guilty of a breach of duty it owed its insured in refusing to take its counsel's advice that an appeal should be taken and that this subjected it to liability for the costs of the appeal. This conclusion by the trial Court is the crux of the case and determines the judgment which must be entered on this appeal.
 
 
 6
 We think the Court's conclusion that Hawkeye was required to follow its counsel's advice to take an appeal is erroneous. An attorney employed to defend litigation is, of course, in complete charge of the litigation, with full powers to conduct it and carry it to a conclusion,[1] but the fact that he has authority to represent his client in the trial and conduct the litigation gives him no right to prosecute an appeal.[2] That is so because his employment has come to an end. Of course, his recommendations with respect to an appeal are entitled to consideration, but whether an appeal shall be taken is a question for determination by the principal. Of course, when rights of others for which the insurer is responsible are involved in the litigation, it must take those rights as well as its own into consideration in determining whether an appeal shall be taken. The insurer will become liable to such parties only if acts fraudulently or in bad faith in refusing to take an appeal. The failure to take the advice of counsel employed to try a case, that an appeal should be taken, in itself, and without more, is insufficient to sustain a finding of bad faith.
 
 
 7
 There is no well settled line of decisions respecting the duty of an indemnitor to take an appeal where a judgment in excess of the maximum amount of coverage has been entered against its insured. In Getchell & Martin Lumber & Mfg. Co. v. Employers Liability Assurance Corp., 117 Iowa 180, 90 N.W. 616, 617, 62 L.R.A. 617, the Court said:
 
 
 8
 'We very much doubt whether defendant, under the clause of the contract we have set out, would be liable for failing to take an appeal * * *.'
 
 
 9
 And in Lincoln Parks Arms Bldg. Corp., etc. v. United States Fidelity & Guaranty Co., 287 Ill.App. 520, 5 N.E.2d 773, 780, the Court said:
 
 
 10
 'An agreement in an insurance contract 'to defend' a suit does not necessarily raise an obligation to prosecute an appeal * * *.'
 
 
 11
 A number of cases have held the company liable for failure to take an appeal. These cases need not be specifically analyzed. In each of them were present facts and circumstances other than the attorney's advice from which the Court found a breach of duty. In Lincoln Parks Arms case, supra, the test laid down was good faith and fair dealing in the performance of a contract having dual rights.
 
 
 12
 In some of the cases finding liability for failure to take an appeal, the fact that the appeal was successful was alluded to as a fact to take into consideration. While we do not feel that the result of an appeal has a bearing on the question of good or bad faith, the result of this appeal tends to indicate that the Company's judgment as to the possible result of an appeal was sounder than was that of its attorney. As pointed out, the trial Court based its conclusion of liability on the sole ground of Hawkeye's refusal to follow the advice of the attorney. This, in our opinion, standing alone is not sufficient to sustain a finding of bad faith and the record is devoid of any other fact or circumstances which would tend to support such a finding.
 
 
 13
 A final contention is made with respect to the interest on the judgment of $10,000. The judgment was entered June 6, 1953. Hawkeye did not deposit the $10,000 into Court until February 26, 1955. Together with the principal sum of $10,000, it deposited interest in the sum of $264.12. This represented interest on the judgment for approximately 60 days after its entry. Hawkeye's theory is that during the 60-day period, it exercised some control over this litigation before it elected not to appeal and withdrew from the case. It argues that it was under no legal duty to pay its portion of the judgment until the decision by the Wyoming Supreme Court was handed down, Rafferty v. Northern Utilities Co., 73 Wyo. 287, 278 P.2d 605, and that had it deposited its portion of the judgment into Court it might have jeopardized the appeal which Northern was perfecting.
 
 
 14
 The cases upon which Hawkeye relies to sustain its contention, such as Hyland v. Hogue, 131 Kan. 512, 292 P. 750, and Farmers' State Bank v. Bracey, 112 Kan. 677, 212 P. 675, 676, are not decisive. In the Farmers State Bank case, costs were assessed against the plaintiff. Plaintiff appealed and while the appeal was pending, paid the judgment for costs. In Hyland v. Hogue, supra, plaintiff recovered judgment on only one of several claims. He appealed as to the claims on which no judgment was recovered, and pending the appeal accepted payment of the item on wich judgment was recovered. In both cases, as in all other similar cases, the Court held that a party to an action cannot accept that part of a judgment favorable to him and yet appeal that part of the judgment adverse to him. But here Hawkeye was not a party to the suit. No judgment was entered against it. The only duty it owed was to indemnify its insured to the extent of $10,000. Had it exercised its right to appeal the judgment, it would have owed its insured the $10,000 plus interest thereon until the judgment was paid. Rather than take an appeal, it chose to sit by and await the outcome thereof. At the conclusion of that case it owed its insured the sum of $10,000 and interest thereon from the date of the judgment until payment was made. At the conclusion of the trial in the State Trial Court, Hawkeye could have tendered payment of the maximum amount of its liability into Court. Such tender would not have precluded its insured from taking an appeal as long as it did not accept the tender and would have stopped Hawkeye's liability for further interest.
 
 Number 5873
 
 15
 In this cross appeal Indemnity complains of the order of the trial Court limiting interest against Hawkeye to $10,000, the maximum liability under its policy. It contends that Hawkeye is liable for interest on the total amount of the judgment in the sum of $22,636.86. We explored this question thoroughly in Morgan v. Graham, 10 Cir., 228 F.2d 625, 54 A.L.R.2d 1290. We held that the liability of the indemnitor for interest was limited to interest on the maximum amount of liability under its policy of insurance. We see no reason for departing from that decision.
 
 
 16
 The judgment in Number 5872 is reversed, and the cause is remanded with directions to enter judgment for Hawkeye. In Number 5873, the judgment is affirmed.
 
 
 
 [1]
 Tobler v. Nevitt, 45 Colo. 231, 100 P. 416, 23 L.R.A.,N.S., 702; Union Bank & Trust Co. of Helena v. Penwell, 99 Mont. 255, 42 P.2d 457; Crews v. Bogy, Mo. App., 285 S.W. 549
 
 
 [2]
 See cases cited in footnote 1